**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | CIV 08-1016 PHX DGC |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| DAVID H. GRIGGS, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**TO THE HONORABLE DAVID G. CAMPBELL:**

On February 18, 2009, the undersigned Magistrate Judge was ordered to prepare a Report and Recommendation regarding Respondent's motion at Docket No. 27, which motion is titled "Supplemental Response to Petitioner's Motion for Contempt; and Motion to Dismiss Order Enforcing Summons."

**Background**

Petitioner, the Internal Revenue Service ("IRS") sues to enforce Respondent's compliance with an IRS summons issued on or about August 10, 2007. The summons required Mr. Griggs to appear, testify, and to produce "books, records, papers, and other data relating" to the investigation of his individual tax liability for the tax years ending December 31, 2001, December 31, 2002, December 31, 2005, and December 31, 2006. Docket No. 3, Attach. The summons stated another purpose as "inquiring into any offense connected with the administration or

enforcement of the internal revenue laws concerning the person identified above..." Id. Although issued by an officer in the "small business self-employed" department of the IRS, the summons did not name any business or sole proprietorship owned or operated by Mr. Griggs, nor did it require him to produce journals, receipts, ledgers, work orders, etc.[1]

---

[1] The summons was directed to Mr. Griggs as an individual and required him to produce:

> the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws, concerning the person identified above for the period shown.
>
> All documents and records in your possession or control reflecting the receipt of taxable income by you for the years [2001, 2002, 2005, 2006] including but not limited to: statement of wages for the years [2001, 2002, 2005, 2006], statements regarding interest or dividend income for the years [2001, 2002, 2005, 2006], employee earnings statements for the years [2001, 2002, 2005, 2006], records of deposits to bank accounts during the years [2001, 2002, 2005, 2006], and any and all other books, records, documents, and receipts regarding wages, salaries, tips, fees, commissions, and any other compensation for services (including gains from dealing in property, interest, rental, royalty and dividend income, alimony, annuities, income life insurance policies and endowment contracts, pensions, income from the discharge of indebtedness, distributive shares of partnership gross income, and income from an estate or trust), so that Federal Income Tax liability for the years [2001, 2002, 2005, 2006])for which years no return have been made) may be determined.

Docket No. 3, Attach.

Compare the summons with the one at issue in United States v. Schmidt, 816 F.2d 1477, 1479 n.1 (10th Cir. 1987), wherein the summons sought:

> [records] including but not limited to: employee earning statements for the years 1981 through 1983; records of deposits to bank accounts, cancelled checks, check registers and bank statements for the years 1981 through 1983; savings account passbooks including money market transactions for the years 1981 through 1983; and any and all books, records, documents regarding wages, salaries, tips, fees, commissions and any other compensation for services (including the receipt of property other than money), gains from dealings in property; interest, rental, royalty, dividend income; alimony, annuities, income from

-2-

Mr. Griggs was required to appear as summonsed on August 22, 2007. Mr. Griggs appeared but refused to produce documents and he refused to testify. The government filed a petition to enforce compliance with the summons on March 25, 2008. The Court granted the petition to enforce the summons on June 2, 2008. See Docket No. 10.

The Court found the IRS had met the criteria specified in <u>United States v. Powell</u> for enforcing the summons. <u>Id.</u> The Court held that Mr. Griggs had failed to demonstrate an abuse of process or improper purpose. The Court's order at Docket No. 10 required Mr. Griggs to produce the subpoenaed documents and testimony within 45 days. <u>Id.</u>

Mr. Griggs appeared before the IRS on June 23, 2008, but did not produce any documents. At that time Mr. Griggs asserted a Fifth Amendment privilege to questions asked by Petitioner.

On September 25, 2008, Petitioner IRS filed a motion asking the Court to order Mr. Griggs to show cause why he should not be held in civil contempt. See Docket No. 13. The Court

---

*life insurance policies and endowment contracts, pensions, income from the discharge of indebtness (sic), distributive shares of partnerships gross income, and income from an estate of trust.*
   *All books and records, invoices, statements and other documents pertaining to operation of Ralph W. Schmidt Contractor Business for the period beginning January 1, 1981, and ending December 31, 1983, including but not limited to all journals including general journal, cash receipts, and cash disbursements journals; general ledger and all subsidiary ledgers; savings account passbooks including money market transactions; bank statements, including cancelled checks and deposit slips; loans and notes ledgers and files; payroll records; depreciation records and investment credit worksheets.*
(emphasis added).

granted the motion and held a hearing on October 29, 2008, requiring Mr. Griggs to show cause why he should not be held in contempt. <u>See</u> Docket No. 17 & Docket No. 21. The Court continued the show cause hearing until November 5, 2008. <u>See</u> Docket No. 21 & Docket No. 22.

Mr. Griggs initially did not appear at the hearing on November 5, 2008. Mr. Griggs was brought before the Court on November 5 and again refused to comply with the summons, asserting that he was entitled to invoke a Fifth Amendment privilege with regard to production of the summonsed documents. <u>See</u> Docket No. 29 & Docket No. 49. Mr. Griggs filed the pending motion to dismiss the order enforcing the summons on the same grounds the same day. <u>See</u> Docket No. 27.

The Court referred the matter to the undersigned for a Report and Recommendation regarding Docket No. 27, i.e., Mr. Griggs' motion to quash the summons, on February 18, 2009.

The Court found that the Government had not satisfied the foregone conclusion rule with regard to work order forms, the only class of document the IRS asserted satisfied the rule. The Court stated:

> The breadth of the summons, however, "far exceeded the [G]overnment's knowledge about the actual documents that [Griggs] created or possessed' during the tax years at issue. <u>In re Grand Jury Subpoena</u>, 383 F.3d at 910-11. At the time the Government issued the summons, "it had no reason to believe that [Griggs] possessed the myriad of documents it sought." <u>Id.</u>

Docket No. 49.

On March 10, 2009, Petitioner IRS filed a motion seeking an evidentiary hearing prior to the issuance of the

-4-

Report and Recommendation.  See Docket No. 55.  Mr. Griggs filed a pleading opposing Petitioner's motion on April 8, 2009.  See Docket No. 59.  Mr. Griggs argued he could invoke his Fifth Amendment privilege against self-incrimination and not produce the summonsed documents and not testify regarding those documents and that no hearing was needed.  The Court granted Petitioner's motion and scheduled an evidentiary hearing to determine if the Fifth Amendment privilege was properly invoked.  See Docket No. 63.

The order setting the evidentiary hearing was docketed on June 1, 2009.  The order setting the hearing allowed Mr. Griggs until June 26, 2009, to

> file under seal with the Court the documents in his possession or under his control and in the possession of others sought by the IRS and *specified in the summons approved by [the Court]*.  Specifically, Mr. Griggs shall produce *all documents regarding the receipt of income for the years 2001, 2002, 2005, and 2006, including but not limited to statements of wages, including 1099 statements and W-2 statements, statements of interest or dividend income, employee earnings statements, and bank account statements showing deposits*.  Mr. Griggs shall Bates stamp each document with a separate number.  Mr. Griggs shall file a pleading, under seal with the Court, which references each Bates stamped document separately by number and indicate with regard to that specific document why he believes he is entitled to invoke the privilege. The undersigned will conduct an in camera review of the documents to determine if they are covered by the privilege.

Docket No. 63 (emphasis added).

Mr. Griggs did not submit any records or other documents to the Magistrate Judge for in camera review, nor did Mr. Griggs file any pleading seeking guidance or clarification

-5-

of the order at Docket No. 63.

In the order setting the evidentiary hearing the Magistrate Judge allowed the IRS until June 26, 2009, to file a pleading indicating precisely what specific documents it wanted Mr. Griggs to produce. The Magistrate Judge ordered the IRS to brief the issue of whether those documents were covered by the foregone conclusion rule. The Magistrate Judge also ordered the IRS to aver whether this matter has been referred to the Justice Department for criminal prosecution and whether Petitioner intended to offer Mr. Griggs any form of immunity. <u>See</u> Docket No. 63 at 11.

In response to the order, on June 19, 2009, the IRS filed the requisite pleading. <u>See</u> Docket No. 64.

> [T]he United States has been made aware of a number of classes of records that are responsive to the Court's enforcement Order. The United States submits that such records should be produced in their entirety for the Court to review for potential Fifth Amendment applicability. Further, the United States submits that *only Mr. Griggs knows whether additional documents exist that are responsive to the Court's enforcement Order*, and to the extent that such documents do exist, Mr. Griggs should also produce those records to the Court.
> ***
> Service-Orders and IRS Forms 1099. Mr. Griggs operates a heating/air-conditioning business in the Phoenix metropolitan area. Mr. Griggs operates his heating/air-conditioning business under the name "East Valley Air" (among other trade names). In operating his heating/air-conditioning business, Mr. Griggs provides to his customers copies of service-order forms in the ordinary course of business. Further, Mr. Griggs has admitted to maintaining these service-order forms. "I have work orders ... I can provide the records." Transcript from the October 29, 2008 Hearing .... These service-order forms

provide information such as the nature of the services provided, a breakdown of the amount billed to the customer ("Service Charge, Flat Rate, Labor, Parts, Tax, Total"), and whether payment has been remitted by the customer ("PAID").

Additionally, it is believed that Mr. Griggs' commercial customers provide IRS Forms 1099 to him stating the amount paid to Mr. Griggs for his services. To the extent that these Forms 1099 exist, Mr. Griggs should produce all of them for review by the Court.

Bank Statements, Deposit Receipts and Cashier's Checks. Mr. Griggs admitted to operating his heating/air-conditioning business largely in cash. It appears that instead of maintaining a business account from which he could pay his business expenses, Mr. Griggs regularly deposits large sums of money, immediately draws cashier's checks for the full amount of the deposit, and then uses those cashier's checks to pay his bills. Mr. Griggs should produce all of the records (including but not limited to cash deposit receipts, cashier's check copies and receipts, bank statements, and cash transaction report (CTR) statements) that show when, where, and for how much each and every cash deposit/conversion occurred...

Concerning the above-discussed service-order forms and bank records, the United States submits that the Fifth Amendment is inapplicable to Mr. Griggs because of the foregone conclusion exception to the Fifth Amendment.... Because the Government already knows with more than reasonable certainty that service-order forms and cash deposit records exist and that Mr. Griggs has control over, and access to, these records, the respondent has no right under the Fifth Amendment to withhold any of these records.

Docket No. 64 (emphasis added). The IRS further averred the matter had not been referred for criminal prosecution nor did Petitioner intend to offer Mr. Griggs any type of immunity from prosecution. Id.

On July 7, 2009, the date set for the ex parte hearing for Mr. Griggs to establish his particularized Fifth Amendment privilege to the summonsed documents, Mr. Griggs appeared and

asserted that he was not certain what specific documents the government had been seeking and that he did not have the specific documents the government had been seeking. Mr. Griggs did not produce any documents for the Magistrate Judge's inspection, but instead asked for leave to file a pleading captioned as a "Declaration." See Docket No. 65.

In his declaration Mr. Griggs avers he does not have "statements of wages" for the years in question and also states that he does not have statements indicating dividend or interest income for the years in question. Mr. Griggs further declares that he was not an "employee" during the years in question and, accordingly, that he does not have "employee earning statements" for the years in question. Mr. Griggs also states he does not have in his possession and does not maintain records of bank deposits made during the years in question. Notably, Mr. Griggs states that he does not "have" documents "pertaining to 'compensation for services...'" Id.

On July 8, 2009, the day after the ex parte hearing, an evidentiary hearing was conducted. At the evidentiary hearing Mr. Griggs answered some questions posed by counsel for the United States and asserted a Fifth Amendment objection to some questions.[2] At the conclusion of the hearing the Magistrate

---

[2] Throughout the July 8 hearing, Mr. Griggs asserted his Fifth Amendment privilege against testimonial incrimination in response to a question posed by counsel for the IRS on 38 occasions. See Docket No. 69 (Transcript of hearing conducted July 8, 2009) at 21, 22, 26, 43, 44, 45, 46, 50-51,87, 88, 96, 97, 99, 100, 105, 107, 108, 110, 124, 125, 126-27, 128, 129, 130, 131, 132-33, 133, 141, 143. On several occasions Mr. Griggs answered a question and then invoked his privilege prior to being asked another question. See, e.g., id. at 43, 44, 46. Each time the Magistrate Judge asked Mr. Griggs if he could or wanted to explain the basis for his assertion of the

Judge ordered the parties to submit supplemental briefing regarding whether Mr. Griggs had carried his burden in establishing that he validly invoked his Fifth Amendment right against self-incrimination and whether Mr. Griggs' could rely on a non-possession of records defense.

On July 29, 2009, Petitioner IRS filed a supplemental brief as ordered by the Magistrate Judge. See Docket No. 71. Mr. Griggs filed his supplemental brief on August 11, 2009. See Docket No. 72. Petitioner IRS filed a "reply brief" to Mr. Griggs' pleading on August 19, 2009. See Docket No. 73.

**Relevant law**

The Magistrate Judge has been asked to recommend the disposition of Mr. Griggs' motion at Docket No. 27, asking the summons be quashed and he not be held in contempt. Specifically, the Magistrate Judge was asked to opine whether Mr. Griggs may rightfully refuse to submit to the summons because he has a Fifth Amendment right to be free of making incriminating testimonial statements. The Magistrate Judge was also asked to address whether Respondent has satisfied the "foregone conclusion" test with regard to the summonsed documents.

> The Fifth Amendment declares that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. At one point in our history, this declaration was taken to mean that the government could not compel the

---

privilege Mr. Griggs declined to further explicate. See id., passim. The Magistrate Judge also indicated to Mr. Griggs several times that he could further explain his Fifth Amendment assertions to the Magistrate Judge in chambers ex parte. Mr. Griggs declined to explain his objections in an ex parte setting. Id. at 5, 9-10, 144.

> production of private papers. <u>See</u> <u>Boyd v.</u>
> <u>United States</u>, 116 U.S. 616, 634-35, []
> (1886). In 1976, the Supreme Court changed
> course, and it is now a "settled proposition
> that a person may be required to produce
> specific documents even though they contain
> incriminating assertions of fact or belief
> because the creation of those documents was
> not 'compelled' within the meaning of the
> privilege." <u>Hubbell</u>, 530 U.S. at 35-36, 120
> S. Ct. 2037 (<u>summarizing</u> <u>Fisher</u>, 425 U.S.
> 391, 96 S. Ct. 1569 []. "[T]he act of
> producing documents in response to a
> subpoena," however, "may have a compelled
> testimonial aspect" in that the act "may
> implicitly communicate 'statements of fact,'"
> such as the witness's admission "that the
> papers existed, were in his possession or
> control, and were authentic." <u>Id.</u> at 36 &
> n.19 [] (quoting <u>United States v. Doe</u>, 465
> U.S. 605, 613 & n.11 [](1984)). Whether the
> act of producing evidence in response to a
> subpoena is sufficiently testimonial that the
> Fifth Amendment applies "depend[s] on the
> facts and circumstances of particular cases."
> <u>Fisher</u>, 425 U.S. at 410, 96 S. Ct. 1569.

<u>United States v. Ponds</u>, 454 F.3d 313, 319 (D.C. Cir. 2006). <u>See</u>
<u>also</u> <u>In re Grand Jury Subpoena, Dated Apr. 18, 2003</u>, 383 F.3d
905, 909 (9th Cir. 2003).

The federal courts have referred to the refusal to
produce summonsed documents as asserting an "act of production"
privilege, recognized by the United States Supreme Court in
<u>United States v. Doe</u>, 465 U.S. 605, 612-13, 104 S. Ct. 1237,
1242-43 (1984). <u>See</u>, <u>e.g.</u>, <u>United States v. Grable</u>, 98 F.3d
251, 253 (6th Cir. 1996).

> In <u>Doe</u>, the Supreme Court held that while
> the Fifth Amendment privilege against
> self-incrimination does not extend to
> corporate documents, personal documents do
> merit at least partial protection. In
> particular, while the contents of personal
> records are not privileged, the physical act
> of producing the documents may be privileged.
> <u>Id.</u> This distinction rests on the observation

> that "[a] government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect." Id.

Grable, 98 F.3d at 253.

The Fifth Amendment only protects a person from "compelled ... Testimonial Communication that is incriminating." Fisher v. United States, 425 U.S. 391, 408, 96 S. Ct. 1569, 1579 (1976). Accordingly, the Fifth Amendment is limited to protecting a person from being compelled to produce documents under circumstances where such production amounts to a testimonial communication in a proceeding wherein their legal jeopardy is at stake. See, e.g., id., 425 U.S. at 409-10, 96 S. Ct. at 1580.[3] However, even when documents themselves are not privileged, the "act of production" of the non-privileged documents may be sufficiently testimonial in nature as to make the privilege applicable to their production by an individual. Doe, 465 U.S. at 610-12, 104 S. Ct. at 1241-42. The circumstances may be such that, by selecting and producing the documents themselves, the individual is admitting the papers existed, that they were in his possession or control, and that they were authentic, all of these admissions providing elements of a case against the individual. See United States v. Hubbell, 530 U.S. 27, 36-38, 120 S. Ct. 2037, 2043-44 (2000).

---

[3] In this matter the summons sought documents from Mr. Griggs as an individual, not as a keeper of business documents, and as noted *supra* called for "the production of, among numerous other items, Forms W-2 (wages) and 1099 (interest and dividend income). These are quintessentially personal documents, the production of which by a taxpayer may be protected by the Fifth Amendment privilege." United States v. Grable, 98 F.3d 251, 256 (6th Cir. 1996), quoting Smith v. Richert, 35 F.3d 300, 304 (7th Cir. 1994).

Additionally, the Fifth Amendment privilege applies to the business records of a sole proprietor. United States v. B & D Vending, Inc., 398 F.3d 728, 733 (6th Cir. 2004), quoting Bellis v. United States, 417 U.S. 85, 87, 94 S. Ct. 2179, 2182 (1974); United States v. G & G Adver. Co., 762 F.2d 632, 634 (8th Cir. 1985).

It is the taxpayer's burden to establish their entitlement to invoke the privilege. See, e.g., United States v. Baker, 721 F.2d 647, 650 (8th Cir. 1983). The bald assertion of privilege does not immunize the individual; the Court must determine whether his refusal is justified. See Hoffman v. United States, 341 U.S. 479, 486-87, 71 S. Ct. 814, 818 (1951). A taxpayer cannot "draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law." United States v. Sullivan, 274 U.S. 259, 264, 47 S. Ct. 607, 608 (1927). Accordingly, if the individual makes no proffer that specific summonsed documents are subject to the privilege, they have not met their burden of establishing their entitlement to the privilege. See United States v. Brown, 918 F.2d 82, 84 (9th Cir. 1990).[4] See also United States v. Allee, 888 F.2d 208, 212

---

[4]
Appellant refused to make any showing that the documents or testimony sought met the required standards. His conduct is thus distinguishable from that of the defendants in Rendahl, who made in camera offers of proof to support their claims. 746 F.2d at 554. Instead, it parallels the fact pattern in Rylander, in which the defendant refused to comply with a district court enforcement order requiring him to produce documents. 460 U.S. at 754, 103 S. Ct. at 1551. "[W]hile the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness ... declines to answer

-12-

(1st Cir. 1989) (finding the assertion of the privilege was not ripe at the stage the taxpayer appealed an order of enforcement); United Stated v. Schmidt, 816 F.2d 1477, 1482 (10th Cir. 1987); United States v. Clark, 574 F. Supp. 2d 262, 267-68 (D. Conn. 2008); United States v. Rinehart, 539 F. Supp. 2d 1334, 1337-39 (W.D. Okla. 2008); Muratore v. Department of Treasury, 315 F. Supp. 2d 305, 310 (W.D.N.Y. 2004).

> If the party refuses to produce the documents at this point, he or she will have waived the claimed privilege. If the party produces the documents to the court in an in camera proceeding, however, the court must give the party an opportunity to assert the claim of privilege as to each document, and must then rule on the validity of the claim as to each. A failure to turn over to the IRS any document as to which the court finds no valid claim of privilege will support a finding of contempt. As to any documents for which the court finds a valid claim of privilege, the party will be required to produce the documents only if granted use immunity.

Grable, 98 F.3d at 257.

**Analysis**

Mr. Griggs did not produce any summonsed records for in camera review, but instead argued at the time set for the in camera inspection of records that he had not understood exactly what records were summonsed and that he did not possess such records. The Magistrate Judge does not find Mr. Griggs'

---

questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production." Id. at 758, 103 S. Ct. at 1553. The privilege does not shield appellant from meeting his burden of proof. See id.
United States v. Brown, 918 F.2d 82, 84 (9th Cir. 1990).

-13-

statements credible; *inter alia*, Mr. Griggs stated at the in camera hearing that he had previously had no record of the summons and that the summons was not in the record in this matter. The summons is found at Docket No. 3, as an attachment to that pleading, and Mr. Griggs did not argue at the enforcement stage that he did not have a copy of the summons.

Mr. Griggs stated at the onset of the evidentiary hearing before the Magistrate Judge that he was abandoning his Fifth Amendment objection to production of the summonsed documents.[5] Mr. Griggs has since declared that he is still asserting a Fifth Amendment privilege and he now also asserts that he is not in possession of any documents which would be responsive to the summons.

Because the Magistrate Judge was asked to render an opinion as to the validity of Mr. Griggs' assertion of the privilege and Petitioner's assertion that the documents sought were a foregone conclusion, these issues will be addressed notwithstanding Mr. Griggs' apparent waiver of the Fifth Amendment privilege at the onset of the hearing on July 8, 2009.

The individual invoking the Fifth Amendment as a basis for withholding testimony and documents bears the burden of establishing their entitlement to the protections of this amendment. See, e.g., Brown, 918 F.2d at 84. To be afforded these protections, Mr. Griggs was required, and ordered, to

---

[5] The Magistrate Judge, addressing Mr. Griggs directly, queried "... But the long and short of it is that it appears that for Fifth Amendment purposes and any objection based on the Fifth Amendment you're now abandoning that position ..." Mr. Griggs responded: "In general, yes, sir." Docket No. 69 (Transcript) at 8.

produce the summonsed records for in camera review. His failure to produce any summonsed records vitiates his claim to the Fifth Amendment privilege. See, e.g., Grable, 98 F.3d at 255-57; Allee, 888 F.2d at 212 ("A district court (and this court, upon review) simply cannot make a determination as to the legitimacy of the interposition of the Fifth Amendment privilege, with respect to particular questions and documents, in advance."). Accordingly, without addressing any other issue before the Court, the Court may conclude that Mr. Griggs is not entitled to assert the Fifth Amendment privilege to any class of documents responsive to the summons.

### Foregone conclusion rule

Records the existence of which are a foregone conclusion are not protected by the Fifth Amendment. See United States v. Norwood, 420 F.3d 888, 895 (8th Cir. 2005). "When the existence of documents is a foregone conclusion, the taxpayer's concession that he has the documents would add little or nothing to the government's information, and the the question is not of testimony but of surrender." Fisher, 425 U.S. at 411, 96 S. Ct. at 1581 (internal citations and quotations omitted), quoted in Norwood, 420 F.3d at 895. The "foregone conclusion" rule does not require the IRS "to have actual knowledge of the existence and location of each and every responsive document...." In re Grand Jury Subpoena Dated Apr. 18, 2003, 383 F.3d at 910. However, the IRS must "establish *the existence* of the documents sought *and [the respondent's] possession of* them with 'reasonable particularity.'" Id. (emphasis added).

> *We wish to emphasize that the burdens of production and proof on the questions of the existence, possession, and authenticity of the summoned documents are on the Government*, not the taxpayer. That the burdens rest initially with the Government is conceded by the IRS in this case and is necessarily implied, if not expressly stated, in <u>Doe</u>. <u>See</u> 465 U.S. at 614 n.13, 104 S. Ct. at 1243 n.13 ("This is not to say that the Government was foreclosed from rebutting [the taxpayer's Fifth Amendment] claim by producing evidence that possession, existence, and authentication were a 'foregone conclusion.' In this case, however, the Government failed to make such a showing.")...

<u>United States v. Rue</u>, 819 F.2d 1488, 1494 n.4 (8th Cir. 1987) (emphasis added). <u>See also</u> <u>In re Grand Jury Subpoena, Dated Apr. 18, 2003</u>, 383 F.3d at 910.

The Supreme Court has emphasized that the applicability of the Fifth Amendment turns on the level of the IRS' <u>prior</u> knowledge of the existence and location of the summoned documents. <u>See</u> <u>Hubbell</u>, 530 U.S. at 44-45, 120 S. Ct. at 2047-48. <u>See also</u> <u>In re Grand Jury Subpoena, Dated Apr. 18, 2003</u>, 383 F.3d at 910. When deciding whether the government has met its burdens of production and proof, the Court must look to the "quantum of information possessed by the government <u>before</u> it issued the relevant subpoena." <u>United States v. Hubbell</u>, 167 F.3d 552, 569 (D.C. Cir. 1999) (emphasis added), <u>aff'd</u>, 530 U.S. 27 (2000). <u>See also</u> <u>Rue</u>, 819 F.2d at 1493 ("The relevant date on which existence and possession of the documents must be shown is the date on which the [subpoena] is served, for it is at that time that the rights and obligations of the parties become fixed").

The undersigned notes that, at the time it issued the summons, Petitioner IRS did not apparently know of the existence of the work orders or cashier's check receipts, or that these "classes" of documents were in Mr. Griggs' possession.  At the time the summons was issued and at the time it was ordered enforced, the IRS could not <u>independently</u> confirm the existence and authenticity of these classes of documents, and Mr. Griggs' possession thereof, without Mr. Griggs.

At the time the summons was issued and at the time it was ordered enforced, the IRS apparently did not know that Mr. Griggs did business as "East Valley Air."[6]  Although Mr. Griggs subsequently informed the IRS that he did at least at one time have the work orders, the existence of the work orders for all of the years in question, or at all, was certainly not a "foregone conclusion" at the time the summons was issued.  <u>See</u> <u>Ponds</u>, 454 F.3d at 320-21 ("Whether an act of production is sufficiently testimonial to implicate the Fifth Amendment, therefore, depends on the government's knowledge regarding the documents *before they are produced*.").

Accordingly, Petitioner IRS has not met the requirements of the "foregone conclusion" test with regard to the sought-after work orders for East Valley Air and cashier's

---

[6] The affidavit of the IRS officer investigating Mr. Griggs' tax liability does not indicate when, i.e., a date or year, she became aware that Mr. Griggs operated an air-conditioning repair business and when she became aware Mr. Griggs used service orders in the course of operating this business.  <u>See</u> Docket No. 41, Exh. 1.  The Corporation Commission report for East Valley Air attached to the affidavit was apparently generated on or about October 8, 2008.  <u>Id.</u>, Exh. 2.  As noted supra, the summons did not seek documents related to a business named East Valley Air.  The work orders obtained by the IRS are all dated 2008.  <u>Id.</u>, Exh. 3.

checks receipts and stubs.  See In re Grand Jury Subpoena, Dated Apr. 18, 2003, 383 F.3d at 910.

In United States v. Norwood, 420 F.3d 888 (8th Cir. 2005), the IRS petitioned for the enforcement of a summons which requested that taxpayer produce, *inter alia*, bank records and credit card statements.  The taxpayer refused to produce the documents, invoking his Fifth Amendment privilege against self-incrimination.  See 420 F.3d at 890.  The Eighth Circuit concluded that, because the IRS already knew of the existence of the two credit cards and the corresponding accounts, the existence of related documents, i.e., account applications, periodic account statements, and charge receipts, was a foregone conclusion. Id., 420 F.3d at 895.

This case is clearly distinguishable because, in this matter, the IRS did not know with any particularity prior to Mr. Griggs' testimony on October 29, 2008, November 5, 2008, and on July 8, 2009, that Mr. Griggs had checking accounts at two different banks.  Nor did the IRS know at the time it issued the summons that Mr. Griggs has been issued at least two credit cards.  At the time the summons was issued and at the time it was ordered enforced, the IRS could not independently confirm the existence and authenticity of these classes of documents, and Mr. Griggs' possession thereof, without Mr. Griggs.  See Hubbell, 530 U.S. at 45, 120 S. Ct. at 2048 (stating that the presumption that a business or individual will have a bank account or credit card account is insufficient to satisfy the foregone conclusion test).

Because the existence of the records sought in the summonses relating to Mr. Griggs' bank accounts and credit cards was not a foregone conclusion, any valid invocation of the Fifth Amendment would protect production of these documents. Petitioner IRS has not satisfied the foregone conclusion test with regard to Mr. Griggs' bank account statements and credit card statements. This same reasoning applies to the IRS' declaration that it "believes" Mr. Griggs received 1099 statements. The IRS' belief, apparently formed on the basis of after-acquired information, that this class of documents exists, is insufficient to sustain its burden of establishing that it knew at the time it issued the summons that this class of documents existed.

**Fifth Amendment privilege regarding documents properly protected by the privilege**

In the circumstance that the material summonsed is information subject to protection by the privilege, determining whether Mr. Griggs could invoke his Fifth Amendment privilege against self-incrimination requires a two pronged analysis. First, the undersigned must determine whether the summonsed information is incriminating in nature, either on its face or in the context of the circumstances that the information is requested. See Hoffman, 341 U.S. at 486-87, 71 S. Ct. at 818. If the information is found to be incriminating, then the undersigned must determine whether Mr. Griggs' asserted apprehension of criminal prosecution is reasonable under the circumstances. See United States v. Argomaniz, 925 F.2d 1349, 1353 (11th Cir. 1991).

As noted supra, Mr. Griggs has not met his burden of establishing the information is incriminating because he has not produced information for in camera review. The failure to do so precludes the assertion of the privilege.

A taxpayer's explained belief that information concerning their income or assets might be used to establish criminal failure to file a tax return may serve as a basis for invoking the Fifth Amendment privilege if that belief is not trifling or imaginary but instead is <u>reasonable</u>. <u>See United States v. Bodwell</u>, 66 F.3d 1000, 1001 (9th Cir. 1995); <u>United States v. Rendahl</u>, 746 F.2d 553, 555-56 (9th Cir. 1984) (concluding that a risk of incrimination had been shown by taxpayers who established that questions asked them would require answers concerning income that could be used to help prove that they had received sufficient income to be required to file a return). Mr. Griggs is not "required to prove the hazard [of incrimination] in the sense in which a claim is usually required to be established in court ...." <u>Hoffman</u>, 341 U.S. at 486, 71 S. Ct. at 818.

Absent clear evidence of an absolute bar to prosecution, the possibility of prosecution for failure to report income or to file a tax return is enough to establish the reasonableness of a belief of hazard. <u>United States v. Sharp</u>, 920 F.2d 1167, 1171 (4th Cir. 1990). Only when the possibility of prosecution is extremely remote, such as when the statute of limitations has expired, is a claim of Fifth Amendment privilege not well taken. <u>See</u>, <u>e.g.</u>, <u>United States v. Nipper</u>, 210 F. Supp. 2d 1259, 1261-62 (N.D. Okla. 2002). If the IRS has

offered the taxpayer immunity, which has not occurred in this matter, then the finding of apprehension of criminal prosecution is not warranted. See, e.g., Sharp, 920 F.2d at 1170-72; United States v. Aeilts, 855 F. Supp. 1114, 1119 (C.D. Cal. 1994).

### Lack of possession defense

The Magistrate Judge was not asked to opine as to whether Mr. Griggs should be held in contempt for failure to comply with the summons. However, in the interests of expediency, the issue will be addressed.

Mr. Griggs is now raising a lack of possession defense to the finding of contempt, which defense he did not raise during the summons enforcement stage, i.e., at the Powell hearing regarding the legitimacy of the summons. Because Mr. Griggs has not produced the summonsed records and because he has not established he is entitled to raise a Fifth Amendment privilege to the production of those documents, he faces the entry of contempt if the Court finds he is not entitled to raise the privilege. Mr. Griggs' pending motion was filed in response to the order to show cause why Mr. Griggs should not be held in contempt.

An individual's current "lack of possession or control of records" is an appropriate ground to challenge a summons. See United States v. Rylander, 460 U.S. 752, 757, 103 S. Ct. 1548, 1553 (1983). See also United States v. Drollinger, 80 F.3d 389, 393 (9th Cir. 1996); United States v. Sorrells, 877 F.2d 346, 348-49 (5th Cir. 1989) ("Once an enforcement order is issued, a defendant cannot contend in a contempt proceeding that he lacked possession or control of the requested documents; he

-21-

may only argue that he presently is unable to comply with the order-in other words, that he now lacks possession or control of documents of the type requested in the summons"); <u>Rue</u>, 819 F.2d at 1494-95.

The United States Supreme Court has stated:

> *In a civil contempt proceeding such as this, of course, a defendant may assert a present inability to comply with the order in question.* <u>Maggio v. Zeitz</u>, 333 U.S., at 75-76, 68 S. Ct. at 411-412 []. While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. *Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action.* It is settled, however, that in raising this defense, *the defendant has a burden of production.* <u>McPhaul v. United States</u>, 364 U.S. 372, 379, 81 S. Ct. 138, 142, [] (1960)[]. Thus while Rylander could not attack the enforcement order on the ground that he lacked possession or control of the records at the time the order was issued, he could defend the contempt charge on the ground that he was then unable to comply because he lacked possession or control.

<u>Rylander</u>, 460 U.S. at 757, 103 S. Ct. at 1552 (some internal citations omitted and emphasis added).

However, to assert this defense, Mr. Griggs bears the burden of producing credible evidence establishing his present inability to comply with the Court's order enforcing the summons. <u>See</u> <u>id.</u>, 460 U.S. at 757, 103 S. Ct. at 1552; <u>Rue</u>, 819 F.2d at 1494-95; <u>Badgley v. Santacroce</u>, 800 F.2d 33, 36-37 (2d Cir. 1986). Mr. Griggs may not meet this burden "simply by alleging nonpossession of the summoned documents and thereafter standing mute and asserting a Fifth Amendment privilege." <u>Rue</u>, 819 F.2d at 1495, <u>citing</u> <u>Rylander</u>, 460 U.S. at 758-61, 103 S.

-22-

Ct. at 1553-54. Accordingly, a finding of contempt would be appropriate notwithstanding Mr. Griggs' assertion that he does not now possess any documents responsive to the summons. This conclusion is supported by the fact that Mr. Griggs has admitted that, after being served with the summons, he destroyed some documents which were responsive to the summons. See United States v. Asay, 614 F.2d 655, 660 (9th Cir. 1980) ("Self-induced inability is not a defense to a contempt proceeding.").

Therefore, Mr. Griggs is legally able to defend the contempt charge on the ground that he is now unable to comply because he now lacks possession or control, however a self-induced inability to produce the summonsed documents weighs in favor of the finding of contempt. Mr. Griggs merely alleges non-possession and stands mute, which does not meet his burden of producing credible evidence establishing his present inability to comply with the Court's order enforcing the summons. See Rue, 819 F.2d at 1495; United States v. Rose, 437 F. Supp. 2d 1166, 1173-74 (S.D. Calif. 2006).

**Conclusion**

An individual waives any Fifth Amendment privilege in the act of production context by failing to present documents they assert are covered by the privilege for the Court's in camera review. Therefore, Mr. Griggs waived any legitimate Fifth Amendment privilege against being forced to produce documents in response to the summons by failing to produce any documents for the Magistrate Judge's in camera review.

Petitioner IRS has failed to meet its burden to establish that, at the time it issued the summons in this

matter, it knew with reasonable particularity that Mr. Griggs maintained a checking account or credit card account, that he had been issued 1099s, or that he operated a business which issued work orders in acknowledgment of payment by customers. Petitioner IRS has indicated that it learned of the existence of these classes of documents through testimony after the summons was issued.

Mr. Griggs has not met his burden of establishing a present inability to comply with the summons.

Accordingly,

**IT IS RECOMMENDED that** Mr. Griggs' motion at Docket No. 27, which motion is titled "Supplemental Response to Petitioner's Motion for Contempt; and Motion to Dismiss Order Enforcing Summons," be **denied**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not

exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 6th day of October, 2009.


_____
Mark E. Aspey
United States Magistrate Judge